## INTERCONNECT PLANNING CORPORATION, Plaintiff,

v.

## AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Western Electric Company Incorporated and New York Telephone Company, Defendants.

### No. 77 Civ. 1584.

United States District Court, S. D. New York.

Sept. 19, 1978.

On Motion for Reargument Oct. 13, 1978.

---

Hopgood, Calimafde, Kalil, Blaustein & Lieberman by Arthur M. Lieberman, Stephen B. Judlowe, New York City, for plaintiff.

Burton K. Katkin, Herman Gelfand, New York City, for defendant American Telephone and Telegraph Co.

Wallace D. Gossett, New York City, for defendant Western Electric Co. Inc.

George E. Ashley, Walter C. Reid, New York City, for defendant New York Telephone Co.

Harold S. Levy, Frank C. Cheston, Michael N. Grove, New York City, of counsel to defendants.

### MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff Interconnect Planning Corporation is one of many companies that have entered the relatively new, rapidly growing, and highly competitive telephone terminal equipment field. In particular, it manufactures sophisticated "multiple position order equipment" for use in large financial institutions, such as banks and brokerage hous-

es, to facilitate trading in securities, commodities, and currency. The defendant companies are parts of the "Bell system," which provides telephone service to most of the nation. The amended complaint alleges that the defendants, through a variety of unfair practices, have attempted to monopolize, and have monopolized, the market for such equipment, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

The defendants have moved to dismiss the amended complaint on the ground that the antitrust laws do not apply to the activities involved in this lawsuit. They point out that the telecommunications industry is pervasively regulated, both by the states and by the federal government, and that the terms upon which defendants may and do compete in this market have been specifically established in a tariff filed by the New York Telephone Company and approved by the New York Public Service Commission.

■ Pervasive government regulation of an industry, however, does not necessarily invest it with blanket immunity from the federal antitrust laws. In the absence of an express statutory exception to the antitrust laws, immunity is implied only in cases where the challenged activity can be classified as "state action," *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), or where enforcement of antitrust standards would be repugnant to the regulatory scheme applicable to the activity in question, *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975). See generally *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 398–400, 98 S.Ct. 1123, 1129–30, 55 L.Ed.2d 364 (1978).

■ To qualify as state action, "anticompetitive activities must be compelled by direction of the State acting as a sovereign." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). In the case before me, the state's involvement in the challenged activity is virtually identical to that in *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976): at the request of the defendants, a state agency merely approved their plan to provide certain equipment to their customers at certain rates. This was insufficient to constitute "state action" in *Cantor*, and it is insufficient here.

■ Nor can it be said that application of antitrust principles to the allegations in this complaint would in any way interfere with the comprehensive regulatory scheme to which the telephone system is subject:

> There is no logical inconsistency between requiring such a firm to meet regulatory criteria insofar as it is exercising its natural monopoly powers and also to comply with antitrust standards to the extent that it engages in business activity in competitive areas of the economy.

*Id.* at 596, 96 S.Ct. at 3120. Just as the market for light bulbs is outside the scope of a power company's natural monopoly, *id.*, so here the market for telephone terminal equipment is outside the scope of the telephone company's natural monopoly. Indeed, ever since the landmark *Carterfone* decision, 13 F.C.C.2d 420, 14 F.C.C.2d 571 (1968), the Federal Communications Commission, far from viewing competition in this sphere as repugnant to its regulatory scheme, has increasingly encouraged such competition. This encouragement has gone so far as to include the adoption of detailed regulations, 47 C.F.R. §§ 68.1 *et seq.*, designed to facilitate competition in the field by insuring that all independently manufactured terminal equipment can be connected to the telephone system without damage to the system. Such equipment, registered as provided in these regulations, may now be plugged directly into the system, and equipment that has not been so registered may be connected through a protective device; moreover, the telephone company must provide, to anyone who requests it, whatever technical information is needed "to permit terminal equipment to operate in a manner compatible with telephone company communication facilities." 47 C.F.R. § 68.110 (1977).

Accordingly, the motion to dismiss is denied.

So Ordered.

## ON MOTION FOR REARGUMENT

Defendants move for reargument or, in the alternative, for certification to the Court of Appeals under 28 U.S.C. § 1292(b). They assert that this court has misapprehended the impact on this case of the holding in *Cantor v. Detroit Edison Co.* that antitrust laws may be enforced, even against a public utility, "in an essentially unregulated area such as the market for electric light bulbs." 428 U.S. 579, 595, 96 S.Ct. 3110, 3120, 49 L.Ed.2d 1141. They point out that the Communications Act of 1934 provides for regulation not just of the transmission of messages by wire, but also of "all instrumentalities, facilities, apparatus, and services . . . incidental to such transmission." 47 U.S.C. § 153(a). From this they would have the court conclude that the market for telephone terminal equipment, in contrast to the market for light bulbs, is essentially a regulated area of the economy.

The Communications Act does indeed grant sufficient authority to the Federal Communications Commission to regulate every aspect of a telephone company's business, even in areas such as the terminal equipment field that lie beyond the scope of its natural monopoly. This authority, however, does not alter the basic structure of the market for telephone terminal equipment, which is in fact almost completely unregulated. I am therefore of the opinion that reargument would not be fruitful.

To support their contention that there is "substantial ground for difference of opinion" justifying certification of this question to the Court of Appeals pursuant to 28 U.S.C. § 1292(b), defendants cite a number of district court cases in which telephone companies have been found to be immune from antitrust suit. I have examined these cases, and find them to be readily distinguishable. In a number, the plaintiff had challenged a tariff requiring the use of a buffering device for the connection of outside equipment to the telephone system. Such tariffs, however, are intended to protect the integrity of the entire telephone transmission system, and thus arguably fall well within the scope of a telephone company's natural monopoly.[1] And *Mobilfone of Northeastern Pennsylvania, Inc. v. Commonwealth Telephone Co.*, 571 F.2d 141 (3d Cir. 1978), claimed by defendants to be "[t]he only post-*Cantor* case markedly similar to the instant case," involved the market for radio-telephone paging services, over which the state had asserted such complete control that no new entrant was allowed into the market without obtaining a certificate of convenience from the Pennsylvania Public Utilities Commission. The clear "intent . . . to regulate competition" that underlay the majority's finding of immunity in *Mobilfone*, however, *id.* at 146, simply does not exist here, since any entrepreneur who desires to do so may enter the telephone terminal equipment market without permission from either the state or federal government. In sum, I fail to find in the case law sufficient basis for a difference of opinion to merit certification of this question.[2]

Accordingly, the motion is denied in all respects.

So Ordered.

1. It is true that among plaintiff's many allegations of predatory acts in this case there is one that accuses defendants of "requiring unneeded buffering apparatus . . . and, indeed, providing unreliable buffering equipment . . . ." The facts supporting this claim may encompass telephone company conduct that extends beyond legitimate protective measures authorized by the Federal Communications Commission. Since the extent to which defendants may be able to assert immunity from suit on this claim must await development of the facts, even this allegation cannot be dismissed as failing to state a claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

2. For a recent case arriving at the same conclusion as is here reached, on virtually identical facts, see *Jarvis, Inc. v. American Telephone and Telegraph Co.*, 1978–2 Trade Cas. ¶ 62,197 (D.D.C.1978).